DSS:SD
F#: 2009R01004

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**M-11-719**

- - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

      - against -

BERT M. NELSON,

         Defendant.

COMPLAINT AND AFFIDAVIT
IN SUPPORT OF APPLICATION
FOR ARREST WARRANT

(T. 18, U.S.C., § 1349)

- - - - - - - - - - - - - - - - X

EASTERN DISTRICT OF NEW YORK, SS:

         ANDREW DREWER, being duly sworn, deposes and says that
he is a Special Agent with the Federal Bureau of Investigation
("FBI"), duly appointed according to law and acting as such.

         In or about and between April 2005 and May 2007, both
dates being approximate and inclusive, within the Eastern
District of New York and elsewhere, the defendant BERT M. NELSON,
together with others, did knowingly and intentionally conspire
(1) to devise a scheme and artifice to defraud, and to obtain
money and property by means of false and fraudulent pretenses,
representations and promises, and transmit and cause to be
transmitted by means of wire in interstate commerce, for the
purpose of executing such scheme or artifice, writings, signs,
signals, pictures and sounds, and (2) to execute a scheme and
artifice to defraud financial institutions and to obtain money,
funds and credits owned by and under the custody and control of

such financial institutions by means of materially false and fraudulent pretenses, representations and promises, contrary to Title 18, United States Code, Sections 1343 and 1344.

(Title 18, United States Code, Section 1349)

The source of my information and grounds for my beliefs are as follows:

1. I have been a Special Agent with the FBI for approximately 3 years, during which time I have investigated violations affecting financial institutions and other financial crimes. In this position, I have conducted physical surveillance, interviewed witnesses, reviewed extensive documents obtained through the service of subpoenas, and used other investigative techniques to secure relevant information for use in criminal prosecutions.

2. My knowledge of the information set forth in this affidavit is based upon my personal participation in this investigation and in numerous other investigations of fraud perpetrated against financial institutions and lenders, including wire fraud and bank fraud, my review of records and reports, my discussions with witnesses and victims, my conversations with other law enforcement agents involved in this investigation and similar investigations, my conversations with and review of information provided by financial institutions and my law enforcement experience and training, among other things.

3.    Because this affidavit is being submitted for the
limited purpose of establishing probable cause to support the
issuance of an arrest warrant, it does not include all of the
facts I have learned during the course of this investigation.
Where actions, conversations and statements of others are
reported in this affidavit, they are reported in substance and in
part unless otherwise indicated.

### Background

4.    An ongoing FBI investigation has revealed that the
defendant BERT M. NELSON was a participant in a scheme to defraud
mortgage lenders and to steal portions of the proceeds of
mortgage loans.  In general terms, that scheme worked as follows.
NELSON, together with others, recruited individuals with good
credit scores ("straw buyers" or "SBs") to purchase residential
properties in the New York City area and Texas.  A "straw buyer,"
in this case, is someone who participates in a real estate
purchase transaction as a buyer, despite having no intention of
living in the property, making mortgage payments on the loan used
to purchase the property, or otherwise assuming the
responsibilities of ownership of that property.  Mortgage
applications for straw buyers frequently contain
misrepresentations, including misrepresentations concerning the
buyer's income, assets, the origin of funds for down payments,
and whether the buyer intends to occupy the property as his or

3

her primary residence.  In this case, once a straw buyer was

identified, NELSON and others collected personal and financial

information from them to be used on mortgage applications

submitted to banks and mortgage companies.  To induce lenders to

extend loans, these applications contained various false

statements regarding the straw buyers' salaries and other

financial information.  NELSON and others also found individuals

to sign documents known as "verifications of rent" ("VORs") for

the straw buyers in support of the loan applications.  Those VORs

typically stated that the straw buyers were current on their rent

payments, although the signatories were not actually the straw

buyer's landlords.

**The Fraudulent Scheme**

    **A.**   **33 Marvin Avenue, Uniondale New York**
          ("SUBJECT PROPERTY 1")

        5.    In or about August 2006, BERT NELSON recruited a

straw buyer ("STRAW BUYER 1") to purchase properties in the New

York City area.  NELSON convinced STRAW BUYER 1 to purchase three

properties (SUBJECT PROPERTY 1, SUBJECT PROPERTY 2 and SUBJECT

PROPERTY 3) in exchange for $5,000 for each property.  NELSON

also agreed to split the profits with STRAW BUYER 1 after each

property was sold.

        6.    On or about August 11, 2006, SUBJECT PROPERTY 1

was purchased by STRAW BUYER 1 through a mortgage loan of

approximately $435,000 from HSBC bank, a federally insured bank, sent via interstate wire transfer on or about August 11, 2006.

7. STRAW BUYER 1 signed the Form 1003 Uniform Residential Loan Application ("FORM 1003") submitted in connection with the loan for SUBJECT PROPERTY 1. STRAW BUYER 1 stated that NELSON came to his home and provided him with the FORM 1003. STRAW BUYER 1 stated that he provided NELSON with accurate information for the FORM 1003, however the FORM 1003, which he signed in front of NELSON, contained false information. For instance, the FORM 1003 stated that STRAW BUYER 1's monthly income in August 2006 was $10,750, meaning STRAW BUYER's annual income was approximately $120,500, when in fact STRAW BUYER 1 was making only approximately $20,400 annually at that time.

**B.   25 Clemente Place, Hempstead, New York**
("SUBJECT PROPERTY 2")

8. On or about September 12, 2006, SUBJECT PROPERTY 2 was purchased by STRAW BUYER 1 through two loans totaling approximately $425,000 from Aurora Bank FSB, a federally insured bank, and DTA Solutions (which is not federally insured). Both loans were sent via interstate wire transfer.

9. STRAW BUYER 1 signed the FORM 1003 submitted in connection with the loan for SUBJECT PROPERTY 2. STRAW BUYER 1 stated that NELSON came to his home and provided him with the FORM 1003. STRAW BUYER 1 stated that he provided NELSON with accurate information for the FORM 1003, however the FORM 1003,

5

which he signed in front of NELSON, contained false information. For instance, SUBJECT PROPERTY 2 was listed as the "primary residence" of STRAW BUYER 1. STRAW BUYER 1, however, had informed NELSON that he never intended to live in SUBJECT PROPERTY 2.

C. **106-44 Princeton Street, Jamaica, New York**
   ("SUBJECT PROPERTY 3")

10. On or about October 30, 2006, SUBJECT PROPERTY 3 was purchased through two loans of approximately $625,000 from RBC Financial Products, Inc. and Deutsche Bank National Trust Co., both federally insured banks, sent via interstate wire transfer.

11. STRAW BUYER 1 signed the FORM 1003 in connection with the loans for SUBJECT PROPERTY 3. STRAW BUYER 1 stated that NELSON came to his home and provided him with the FORM 1003. STRAW BUYER 1 stated that he provided NELSON with accurate information for the FORM 1003, however, the FORM 1003 which he signed in front of NELSON, contained false information. For instance, in the FORM 1003, the property was listed as the "primary residence" of STRAW BUYER 1. STRAW BUYER 1, however, had previously informed NELSON that he never intended to live in SUBJECT PROPERTY 3.

12. STRAW BUYER 1 stated that on October 6, 2006, he was paid $15,000 by check to purchase SUBJECT PROPERTY 1, SUBJECT PROPERTY 2 and SUBJECT PROPERTY 3. The check, which was obtained during the investigation, was signed by NELSON and was issued by

6

a business owned and controlled by NELSON.

D. **240 Chapel Hill Road, Prosper, Texas**
("SUBJECT PROPERTY 4")

13.   In or about January 2007, NELSON recruited another
straw buyer ("STRAW BUYER 2") to purchase a property in Texas.
NELSON met STRAW BUYER 2 in Brooklyn, New York and convinced him
to purchase SUBJECT PROPERTY 4 in exchange for a $5,000 payment.
On or about May 10, 2007, SUBJECT PROPERTY 4 was purchased by
STRAW BUYER 2 through two loans of approximately $522,500 from
Capital One Financial, a federally insured bank,  sent via
interstate wire transfer.

14.  STRAW BUYER 2 stated that during the meeting in
Brooklyn, New York, he provided NELSON with accurate information
for the FORM 1003, however the FORM 1003 contained false
information.  For instance, the FORM 1003 falsely stated that
STRAW BUYER 2's monthly income was $15,000 per month, when in
fact SB2 was earning approximately $40,000 annually at that time.
In addition, SUBJECT PROPERTY 4 was listed as the "primary
residence" of STRAW BUYER 2. STRAW BUYER 2, however, had
previously informed NELSON that he never intended to live in
SUBJECT PROPERTY 4.

15.   After the closing, STRAW BUYER 2 was paid $5,000
by check from a business owned and controlled by NELSON. In
addition, bank records reflect that NELSON paid the mortgage

7

payments for SUBJECT PROPERTY 4 from a corporate account that he controlled.

WHEREFORE, I respectfully request that an arrest warrant be issued so that the defendant BERT M. NELSON may be dealt with according to law.

ANDREW DREWER
Special Agent
Federal Bureau Investigation

Sworn to before me this
14 day of July 14  2011

THE HON. ANDREW CARTER
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

8